IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 27, 2024

**STATE OF TENNESSEE v. TREVALE DEMARCO DAVIS**

**Appeal from the Criminal Court for Hamilton County**
**Nos. 306961, 305774        Barry A. Steelman, Judge**

———————————————————

**No. E2023-00579-CCA-R3-CD**

———————————————————

Trevale Demarco Davis, Defendant, appeals the Hamilton County Criminal Court's probation revocation of his effective five-year sentence for three counts of aggravated burglary and one count of robbery. On appeal, Defendant contends that the trial court abused its discretion by revoking his probation. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JOHN W. CAMPBELL, SR., JJ., joined.

Charles Patrick Dupree, Chattanooga, Tennessee, for the appellant, Trevale Demarco Davis.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Coty G. Wamp, District Attorney General; and Austin Scofield, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Factual and Procedural Background

This appeal stems from the trial court's revocation of Defendant's probation in cases 305774 and 306961.[1] On September 19, 2018, Defendant pleaded guilty to two counts of

---

[1] Defendant did not include the guilty plea transcripts for his underlying offenses in cases 305744 and 306961 in the appellate record. Thus, the factual bases for those convictions are unknown.

aggravated burglary in case number 305774. The trial court ordered concurrent sentences of four years' imprisonment suspended to supervised probation, and restitution of $500. Subsequently on February 27, 2019, a Hamilton County Grand Jury indicted Defendant on one count of aggravated robbery and one count of aggravated burglary with the offense date of October 25, 2018 in case number 306961. On March 5, 2019, the State filed a probation violation report against Defendant alleging violations of his probation in case number 305774. The bases of the violations included the conduct underlying the charges in case number 306961, failing to report his arrest on those charges, and a positive drug screen. As to his drug screen, Defendant admitted to his probation officer he had ingested methamphetamine, cocaine, and marijuana. On December 11, 2019, Defendant waived his right to a hearing and conceded the violations. The trial court ordered a partial revocation, sentenced Defendant to the time he had served between March 12, 2019 and December 11, 2019, and reinstated Defendant's supervised probation. On that same date, in case number 306961 Defendant pleaded guilty to the lesser-included offense of robbery and aggravated burglary. The trial court sentenced him to five years' imprisonment on each count, suspended to probation with the special conditions to pay $800 in restitution and to have no contact with the victim in that case. The trial court imposed the sentence in that case concurrently to Defendant's sentence in case number 305774.

On July 30, 2021, the State filed another probation violation report in both cases. It alleged Defendant violated his probation by: (1) committing another burglary on July 3, 2021;[2] (2) failing to report his arrest to his probation officer; and (3) failing to make a single payment towards his restitution. The trial court issued a warrant for Defendant's arrest on August 6, 2021, and set that Defendant be released on his own recognizance upon arrest. It appears from the record Defendant was never arrested on that warrant. On April 22, 2022, the State filed an addendum to the violation of probation report alleging Defendant had again violated his probation on April 19, 2022 by: (1) possessing a firearm with the intent to go armed; (2) possessing a firearm; and (3) engaging in an assaultive and intimidating behavior. Because there was an outstanding capias for Defendant's prior violations of probation, the trial court ordered that Defendant be held with no bond.

A probation revocation hearing was held on March 28, 2023, for case numbers 305774 and 306961. Officer Christopher Dyess with the Chattanooga Police Department testified that he conducted a traffic stop on a car for an improper turn on April 19, 2022. Defendant was a back-seat passenger in the car, and after checking the records of the car's occupants, Officer Dyess discovered Defendant had outstanding warrants and was a

---

[2] At the revocation hearing, the trial court acknowledged that the violation report mistakenly called it a robbery, but "it was clear from the narrative that it was a burglary." The violation report attached the police incident reports which also confirm the charge was burglary.

previously convicted felon. As Officer Dyess returned to the vehicle, he "observed what appeared to [be] the magazine of a handgun under the front passenger seat." At that point, Officer Dyess ordered the occupants to place their hands on the car's inside roof, and he waited for backup. Once other officers arrived, he ordered the occupants to exit the vehicle. Officer Dyess stated, "It was at that time that I was made aware that [Defendant] had his . . . foot concealing a firearm that was under his feet." Officer Dyess became aware that there was a handgun in the backseat floorboard with Defendant in addition to another firearm in the front compartment. Officer Dyess seized a Smith & Wesson .380 handgun in the floorboard where Defendant had been seated. The front seat passenger admitted to the firearm in the front compartment, but after Officer Dyess read Defendant his *Miranda* rights, Defendant "[c]laimed possession" of the .380 handgun and "stated it was his." Defendant admitted he had the .380 handgun for about two weeks. Officer Dyess then arrested Defendant for being a felon in possession of a firearm.

On cross-examination, Officer Dyess stated that Defendant had three outstanding warrants at the time of his arrest, but he could only recall two: aggravated robbery and aggravated burglary. At the time of Defendant's arrest, Officer Dyess was unaware Defendant was on probation. He stated that although he did not have a written statement by Defendant that the firearm was his, his body camera recorded the entire conversation.

Defendant testified on his own behalf and asked the trial court to reinstate his probation and give him a time-served sentence. At the time of the revocation hearing, Defendant had been in custody for more than eleven months, and he stated that he wanted to get out and raise his family. He also said he had a job lined up to work with his stepfather in construction. Defendant stated that if he were released, he would live with his mother or grandmother, he would not participate in gang activity, and he would ensure that he was not around firearms. On cross-examination, Defendant claimed that on the day he was arrested, he did not know that a firearm was in the vehicle. Defendant acknowledged, however, that he had been released on probation twice before, that both times he pleaded guilty to additional felonies, and that each time the judge informed him he could never be in possession of a gun. Then he admitted that for the third time, he had violated his probation "with another arrest," but told the court he could "do good on probation."

The trial court found the testimony of Officer Dyess to be credible. Specifically, the court found:

> [A]fter [Defendant] had been convicted of robbery and these three other felony crimes, that he was in a motor vehicle and that underneath him in the vehicle was a firearm, and that he claimed possession of the firearm. The [c]ourt believes Officer Dyess.

And so based on that, the [c]ourt finds that [Defendant] was in violation of probation in [case numbers] 305774 and 306961, and the [c]ourt finds that the revocation is sustained.

Because [Defendant] had been on probation for a crime of violence, that is robbery, and crimes that involved the entry into the dwelling place of others, the [c]ourt finds that when he is in possession of a firearm, that he poses a risk of danger of further violence, so the [c]ourt orders that his sentence should be ordered into execution to be served in both cases.

He will receive credit for the time that he's previously served.

After the trial court revoked Defendant's sentence, Defendant received a sentence of four years in case number 305774 and a concurrent five years in case number 306961, for an effective sentence of five years imprisonment in the Tennessee Department of Correction. The court awarded Defendant eleven months and eight days of jail credit. Defendant timely filed a notice of appeal.

## II. Analysis

Defendant asserts that the trial court abused its discretion when it found Defendant violated the terms of his probation. The State argues that Defendant is not entitled to relief because "he violated several terms of his probation by possessing a firearm after being convicted of a felony crime of violence." We agree with the State.

We review a trial court's decision to revoke a criminal defendant's probation under an abuse of discretion standard with a presumption of reasonableness "so long as the trial court places sufficient findings and reasons for its decisions as to the revocations and the consequences on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *State v. Davis*, 466 S.W.3d 49, 61 (Tenn. 2015) (citations omitted). "If a trial court fails to state its findings and reasons for the revocation on the record, we may conduct a de novo review "if the record is sufficiently developed," or we may remand the case to the trial court to make the appropriate findings. *State v. Booker*, No. E2023-00435-CCA-R3-CD, 2024 WL 1928840, at * 2 (Tenn. Crim. App. May 2, 2024) (citing *Dagnan*, 641 S.W.3d at 759).

Probation revocation is a two-step consideration in which a trial court makes two separate determinations. *Dagnan*, 641 S.W.3d at 753. First, the court determines whether to revoke probation; if so, the court must determine the consequences to apply upon

revocation. *See id.* at 757. "[T]hese are two distinct discretionary decisions, both of which must be reviewed and addressed on appeal." *Id.* at 757-58. "Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden," but the trial court's findings need not be "particularly lengthy or detailed but only sufficient" for a reviewing court's "meaningful review." *Id.* at 758-59.

A trial court may revoke a defendant's probation upon a finding by a preponderance of the evidence that a defendant has violated the conditions of probation. Tenn. Code Ann. §§ 40-35-310(a), -311(e)(1) (Supp. 2021). We have previously explained a trial court's options when it finds that a defendant has violated probation:

> [T]he trial court may: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for remainder of the unexpired term to a sentence of probation.

*State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *3 (Tenn. Crim. App. July 11, 2022) (citing Tenn. Code Ann. §§ 40-35-308(c)(1), (2); -310; - 311(e)(1), (2) (2021)), *no perm. app. filed*. "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jones*, No. E2023-00155-CCA-R3-CD, 2023 WL 6389810, at *3 (Tenn. Crim. App. Sept. 29, 2023) (quoting *State v. Shelton*, No. E2022-00875-CCA-R3-CD, 2023 WL 2261081, at *3 (Tenn. Crim. App. Feb. 28, 2023), *perm. app. denied* (Tenn. June 29, 2023)).

Although "a new arrest and pending charges are proper grounds on which a trial court can revoke a defendant's probation, a trial court may not rely on the mere fact of an arrest or an indictment to revoke a defendant's probation." *Booker*, 2024 WL 1928840, at *4 (citing *State v. Harkins*, 811 S.W.2d 79, 83 n.3 (Tenn. 1991)). Indeed, the State must produce evidence "'in the usual form of testimony' to establish the probationer's commission of another offense while on probation." *Id.* (first quoting *State v. Ellison*, No. 01C01-9708-CR-00361, 1998 WL 272955, at *2 (Tenn. Crim. App. May 29, 1998); and then citing *State v. Chaney*, No. 01C01-9801-CC-00010, 1999 WL 97914, at *1 n.2 (Tenn. Crim. App. Feb. 18, 1999)). The State needs only to prove by a preponderance of the evidence that a defendant violated the law. *Booker*, 2024 WL 1928840, at *4 (citing *State v. Edwards*, No. W1999-01095-CCA-R3-CD, 2000 WL 705309, at *3 (Tenn. Crim. App. May 26, 2000), *perm. app. dismissed* (Tenn. Sept. 11, 2000)).

Regarding the first prong of *Dagnan*, Defendant argues the trial court abused its discretion when it revoked his probation "without any sworn proof that these violations were explained to him or that he had done any of the alleged violations." Specifically, he

argues that the State "had not presented . . . proper sworn or competent proof of the alleged violations as required by the provisions of [Tennessee Code Annotated section 40-35-311(e)(1)(A) and (B)." In support of his argument, Defendant cites to our supreme court's decisions in *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999), and *State v. Hawkins*, 811 S.W.2d 79, 82 (Tenn. 1991), without any explanation as to how these cases support his position. In *Hunter*, the supreme court determined that when a trial court finds a defendant has violated the conditions of probation, it "has the authority to cause execution of the defendant's original judgment as it was originally entered, Tenn. Code Ann. §§ 40-35-310, -311, or to extend probation for a period of up to an additional two years" on the original probationary period. 1 S.W.3d at 647. In *Hawkins*, the court acknowledged that for a trial court to abuse its discretion in revoking a defendant's probation, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." 811 S.W.2d at 82 (citing *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). Thus, while both cases generally discuss a trial court's options when a defendant fails to comply with the terms of his or her probation, neither case stands for Defendant's argument as to the State's burden of proof in probation revocation hearings.

Regardless, here the record contains substantial evidence to show that Defendant violated his probation by committing a new crime. The trial court relied upon the sworn testimony of Officer Dyer, who testified that when he returned to the vehicle after conducting a records check, he observed what he believed to be "the magazine of a handgun under the front passenger seat." The officer then noticed Defendant "concealing" another firearm "that was under his feet." After reading Defendant his *Miranda* rights, the officer questioned him about the firearms and Defendant "claimed possession" of the .380 caliber handgun in the back seat. He admitted he had the .380 caliber handgun for two weeks. As a convicted felon with prior violent felony convictions, Defendant was prohibited from possessing a firearm. *See* Tenn. Code Ann. § 39-17-1307(b)(1)(B), (c)(1). At that point, Officer Dyess arrested Defendant for being a convicted felon in possession of a firearm. As far as Defendant's argument that he was unaware he could not violate the law as a condition of his probation, Defendant's testimony at the hearing defeats his argument on appeal. Defendant admitted that he was twice convicted of felony offenses, including aggravated robbery and aggravated burglary. Both times he was placed on probation and both times, Defendant acknowledged, the trial court had told him he was not able to possess a firearm. Defendant also admitted that he had violated his probation multiple times with new arrests. Accordingly, the trial court correctly determined that Defendant violated the terms of his probation by a preponderance of the evidence by committing a new violation of law and was within its discretion to revoke Defendant's probation. *See* Tenn. Code Ann. §§ 40-35-311(e)(2).

- 6 -

Moving to the second prong of *Dagnan*, a trial court may consider "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character" before determining the consequence for a defendant's probation violation. *Dagnan*, 641 S.W.3d. at 759 n.5. Here, a review of the record shows the trial court properly considered many of the factors outlined in *Dagnan*. First, it considered Defendant's prior violations, noting each time he had violated the terms of his probation and pleaded guilty to new felony offenses. The trial court also considered the seriousness of the violations and the risk of Defendant committing further violent acts:

> Because [Defendant] had been on probation for a crime of violence, that is robbery, and crimes that involved the entry into the dwelling place of others, the [c]ourt finds that when he is in possession of a firearm, that he poses a risk of danger of further violence, so the [c]ourt orders that his sentence should be ordered into execution to be served in both cases.

The trial court noted Defendant's criminal history and the seriousness of his violations. It found that Defendant is a risk for further danger and violence. Defendant's violations demonstrate his low potential for compliance with a probation sentence. *See, e.g.*, *Booker*, 2024 WL 1928840, at *5. As stated above, "an accused, already on probation, is not entitled to a second grant of probation." *Jones*, 2023 WL 6389810, at *3.

Accordingly, we conclude that the trial court did not abuse its discretion in finding that Defendant violated his probationary sentence and ordering him to serve the balance of his sentence in confinement. Defendant is not entitled to relief.

## III. Conclusion

For the reasons stated above, we affirm the judgement of the trial court.

_____
MATTHEW J. WILSON, JUDGE